# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br>vs.<br><br>$20,000 IN U.S. CURRENCY,<br><br>　　　　　　　　　　　Defendant. | CASE NO. 14cv1341-LAB (JLB)<br><br>**TENTATIVE RULING ON CLAIMANT THOMAS YANKLE'S MOTION TO SUPPRESS AND MOTION FOR SUMMARY JUDGMENT** |

Currently on calendar for Monday, August 17, 2015 at 11:15 a.m. is a hearing on Claimant Thomas Yankle's motion to suppress evidence and motion for summary judgment. The briefing on both motions is now complete and this order represents the Court's tentative ruling. Counsel should appear for the hearing — but at **12:15**, not 11:15 — prepared to focus discussion on this proposed ruling. If Yankle doesn't wish to contest the tentative ruling, he should file a notice of non-opposition to the entry of a final order on these motions.

This ruling is tentative; the final ruling will include more detailed reasoning and citations to authority.

**Tentative Ruling**

**Background**

On February 18, 2014, the Government applied for a warrant to search a particular Express Mail Parcel. *See* 14mj647-NLS-1, *USA v. Express Mail Parcel #EF085568537US*.

The application identified the object of the search as: evidence of a crime; contraband or fruits of a crime; and property used, intended for use, or designed for use in committing a crime. It was supported by two affidavits, one from postal inspector Gary Arias and one from police investigator and canine handler Patrick Estrada, whose trained canine partner Chewy had alerted to the parcel.

Arias' affidavit explained that he encountered the parcel on February 11, 2014 while conducting routine interdiction of inbound parcels. The parcel was hand-addressed, sent from an entity called "Stank Properties" in Massillon, Ohio and sent to "TJY, Inc." in San Diego. Arias investigated and determined that there were no entities by those names at those addresses. The affidavit explained that the size and characteristics of the parcel were consistent in Arias' experience with proceeds from drug trafficking, and gave specific reasons for those conclusions.

The affidavit related that Arias went to the residence the parcel was addressed to and left a delivery notice with a request for a call. Thomas Yankle returned the call. He told Arias he was expecting a parcel containing an unknown amount of money, and refused to give Arias permission to open it. Yankle said he was flying to Chicago the next morning and needed the money for his trip, though he said he did not know who had sent him the money.

Officer Estrada's affidavit sets forth, among other things, his background and training in narcotics detection, as well as the training and experience of Chewy. As one of Estrada's and Chewy's qualifications, the affidavit says that in December of 2013, both successfully completed a course on narcotic odor detection and were certified by the California Narcotic Canine Association (CNCA). Since that time, the affidavit said, both had over a dozen hours of training time and that Chewy had correctly alerted, resulting in the seizure of narcotics and narcotics proceeds.

Magistrate Judge Nita Stormes issued the warrant on February 18. The warrant said the parcel was believed to contain controlled substances, and materials and documents reflecting the distribution of controlled substances, including money paid for controlled substances. The $20,000 at stake in this case was found when the parcel was opened.

On May 28, 2014, a state judge issued a search warrant authorizing the search of Yankle's residence. (*See* Docket no. 41-2 (state search warrant and application therefor).) The suppression motion represents that probable cause for this warrant was based primarily on the fruits of the federal search warrant. Yankle argues that because the federal warrant was issued without probable cause, its fruits should be suppressed, and evidence discovered as a result of execution of the state warrant should also be suppressed.

Arias found items in Yankle's trash can that provided a secondary basis for the state warrant. On May 27, a day when garbage trucks collected the local trash, Arias looked in a trash can near Yankle's garage. He found several items with Yankle's name on them, and various items suggestive of drug distribution. Among the items were two boxes that had contained heat-sealed vacuum sealing bags, a portion of a vacuum sealed plastic bag, a printed receipt for UPS shipping, a birthday card to "Tom" saying the sender had sent $3500 and would send $1500 more within the week, three coffee filters with an unknown residue, a receipt for three boxes, and two bank receipts for deposits. On May 28, Arias conducted a presumptive field test on one of the coffee filters and it tested positive for amphetamine. A later test showed the filters did not contain controlled substance residues, and Yankle cites the later test in support of his contention that probable cause was lacking. Yankle also speculates that a neighbor likely threw the drug-related garbage into his trash can, in order for the neighbor to avoid incriminating himself. Finally, he also speculates that the coffee filters were likely the result of cleaning a coffee-maker with a vinegar solution.

Officers executing the state search warrant found about 38 pounds of marijuana in Yankle's garage.

**Motions**

Yankle, as the party seeking summary judgment, bears the burden of showing there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(a). His sole argument in favor of summary judgment is that, assuming the motion to suppress is granted, there is no evidence linking the Defendant currency to the distribution of drugs. If the motion to suppress

1 fails, Yankle has not met his burden.

2 The motion to suppress the fruits of the federal search is based on an alleged lack of probable cause. Yankle maintains that if the fruits of the federal search are suppressed, then evidence seized pursuant to the state search warrant must also be suppressed. On the other hand, if the federal warrant was properly issued, Yankle's challenge to the state warrant necessarily fails.

With regard to the federal warrant, Yankle's sole argument is that it was invalid because the warrant application failed to establish probable cause. *See United States v. Harris*, 403 U.S. 573 (1971); *United States v. Miller*, 753 F.2d 1475, 1479 (9th Cir. 1985) (magistrate must determine whether there is a "fair probability" that contraband or evidence of a crime will be found, before issuing warrant). *See also Illinois v. Gates*, 462 U.S. 213, 238 (1983) (magistrate's task in deciding whether to issue a warrant is to make a "practical, common-sense decision").

His first challenge is to show that the dog alert did not establish probable cause. Yet the affidavit said that both Officer Arias and Chewy had been properly trained in the detection of narcotics. Chewy's alert, standing alone, would therefore ordinarily amount to probable cause. *See Florida v. Harris*, 133 S.Ct. 1050, 1057 (2013) ("If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search.") The only evidence Yankle cites to challenge the reliability of Chewy's alert is his own statistical analysis of search warrants for Express Mail packages coming into San Diego between January 1, 2009 and February 18, 2014. (Mot. to Suppress, at 5:22–6.) In each of the 77 cases, Yankle argues, a canine alerted to a package. Drugs were found in five of those packages. Yankle concludes from this "that Inspector Arias knew there was a 93% probability that the package did <u>not</u> contain drugs." (*Id.* at 6:8–9.) But his analysis is heavily flawed, and does not withstand scrutiny.

To begin with, the search warrant and the application for it were directed not just at drugs, but also the proceeds from drugs, such as currency. Because drug dealers handle

both drugs and money and often store the two near each other, money can be tainted with drug residue, leading a canine to alert. (Arias Affidavit in Supp. of Fed'l Warrant Application, at ¶ 4(a).) According to Yankle's own analysis, either currency or a detectable amount of drugs was found in 61 of the 77 packages in cases he analyzed. As for the remaining 16 packages, Yankle does not attempt to show they contained no drug residue; he has merely offered his own conclusions in cases where warrants were issued.

Second, the Supreme Court has cautioned that field results — like the ones Yankle points to — are a poor indicator of a narcotics dog's reliability, partly because they are prone to "markedly overstate a dog's real false positives":

> if the dog alerts to a car in which the officer finds no narcotics, the dog may not have made a mistake at all. The dog may have detected substances that were too well hidden or present in quantities too small for the officer to locate. Or the dog may have smelled the residual odor of drugs previously in the vehicle or on the driver's person.

*Harris*, 133 S.Ct. at 1057. *See also id.* at 1056 n.2 (citing authority). In the survey Yankle conducted, the failure of authorities to find detectable quantities of drugs in the packages cannot be said to be a failure on the dogs' part, nor can it be said that probable cause was lacking. What is more likely is that most or all of the packages in which no drugs were found contained items (such as currency) with drug residue on them, or else had been packed, handled, or stored near drugs, leaving a residual odor. "In the usual case, the mere chance that the substance might no longer be at the location [to be searched] does not matter; a well-trained dog's alert establishes a fair probability—all that is required for probable cause—that either drugs or evidence of a drug crime . . . will be found." *Id.* at 1056 n.2.

What's more, Yankle hasn't focused on Chewy's field results, but instead has blended the results of all dogs' alerts that resulted in issuance of warrants by this Court. In effect, Yankle's argument is that Chewy's alert was unreliable because (he thinks) other dogs have falsely alerted. This is illogical and inconsistent with binding precedent.

By itself, the alert to the package by a trained narcotics canine was enough to establish probable cause for issuance of the federal warrant, and both motions fail for that reason. The Court likewise rejects Yankle's subsidiary arguments. Inconsistencies between

Arias' affidavit and his deposition testimony are minor, and explained by facts in the record; there are no indicia of mendacity. Besides, even if the federal warrant were suppressed, Arias' search of the trash can[1] uncovered enough evidence to establish probable cause for issuance of the state warrant.

**Conclusion and Order**

Yankle has pointed to no persuasive reasons why either of the warrants should be suppressed, and there is therefore no basis on which to grant summary judgment in his favor. The Court tentatively rules that Yankle's motions should be denied.

**IT IS SO ORDERED**.

DATED: August 13, 2015

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

[1] Arias permissibly searched the trash can without a warrant. *See California v. Greenwood*, 486 U.S. 35, 39–43 (1988). The items he found suggest drug dealing and are connected to Yankle. The fact that a laboratory test later uncovered no drug residues in the coffee filters is immaterial, since the field test Arias relied on suggested the filters did have drug residue on them. *See Illinois v. Rodriguez*, 497 U.S. 177, 184 (1990) (warrant's validity is not impaired if it is based on apparently reliable information, even if that information is later found to be erroneous).